UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GERTRUDE JOSEPH,<br>*Plaintiff*,<br>v.<br>APPLE INC.,<br>*Defendant*. | Index No.<br>**COMPLAINT**<br>Jury Trial Demanded |

Plaintiff Gertrude Joseph, by her attorneys, Eisenberg & Baum, LLP, as and for her Complaint against Defendant Apple Inc. hereby states as follows:

## THE PARTIES

1. Plaintiff Gertrude "Trudy" Joseph is an individual who at all relevant times was and still is a resident of Brooklyn, New York.

2. Defendant Apple Inc. (hereinafter referred to as "Defendant" or "Apple") is a corporation organized pursuant to the laws of the California with its principal place of business located at One Apple Park Way, Cupertino, California 95014.

3. At all relevant times, Defendant was Plaintiff's employer within the meaning of the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").

4. At all relevant times, Plaintiff performed her work for Defendant in New York. Defendant knew and authorized Plaintiff to perform her employment duties in New York.

5. The discriminatory and harassing conduct alleged herein affected the terms and conditions of Plaintiff's employment while she was working in New York and had an impact on Plaintiff within New York.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States. Plaintiff is a citizen of New York and Defendant is a citizen of California, and complete diversity therefore exists between the parties.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendant has sufficient contacts with this District to subject them to personal jurisdiction at the time this action is commenced, and the acts and omissions giving rise to this Complaint occurred within this District.

## FACTUAL BACKGROUND

8. Ms. Trudy Joseph, a Black woman, is employed by Apple as a Creative Content Producer within its Global Creative Services & Production division.

9. In September 2025, Lee Lodge, Creative Director of Apple Music Studios, subjected Ms. Joseph to escalating hostile, harassing, and ultimately aggressive conduct.

10. On September 11, Lodge publicly demeaned Ms. Joseph's work in front of colleagues, stating that her work was "shit."

11. On September 15, he excluded Ms. Joseph and another Black woman coworker from participating in an external meeting despite their designated speaking roles.

12. On September 17, while Ms. Joseph was working on a fan-submitted Q&A project, Lodge dismissed her attempt to ask a question by placing his hand in front of her face, turning away, and stating she was "not important," while instead engaging her male colleague. Although that colleague defended Ms. Joseph, Lodge continued to disregard her.

13. Approximately ten minutes later, Lodge returned and questioned Ms. Joseph.

14. When Ms. Joseph indicated she no longer had questions, Lodge became visibly angry and aggressive, reaching over her desk's privacy barrier and slamming her laptop onto her hands as she attempted to protect her workspace.

15. Feeling trapped, Ms. Joseph gave minimal responses to de-escalate the situation.

16. Immediately afterward, Ms. Joseph's male colleague expressed concern for her safety. Ms. Joseph then promptly reported the incident to her supervisors, who escalated it to Human Resources ("HR") People Team and Business Conduct.

17. Despite her repeated reports expressing fear for her safety and discomfort working with Lodge, Apple failed to implement any timely remedial or protective measures.

<u>Apple's Inadequate Investigation and Deficient Response</u>

18. On September 22, Employee Relations ("ER") contacted Ms. Joseph and met with her on September 24 and 26, initiating a ten-week investigation.

19. During that period, however, no one from HR or ER provided updates, accommodations, or a safety plan, despite Ms. Joseph's continued requirement to work with Lodge.

20. On December 1, ER closed its investigation, finding no policy violation.

21. When Ms. Joseph raised ongoing safety concerns, ER dismissed them and instructed her to continue working with Lodge and report any future incidents.

22. In a subsequent December 4 meeting with HR, Ms. Joseph challenged the adequacy of ER's investigation, noting that key witnesses she identified had not been interviewed.

23. On December 11, Ms. Joseph met with Apple's NYC site leader, who acknowledged he had not been informed of the full scope of her complaints, including Lodge slamming Ms. Joseph's laptop onto her hands.

24. During that meeting, Ms. Joseph also reported Lodge's prior racially harassing conduct, including a 2024 incident in which Lodge, a white man from the U.K., joked to a Black employee that the employee would be deported before Lodge under Trump's immigration policies

25. Following this meeting, Ms. Joseph provided HR with additional details and raised concerns about Apple's handling of workplace violence complaints. HR responded defensively, discouraging her use of the term "violence" and directing her to review company policies.

26. On December 23, Ms. Joseph submitted a detailed written timeline aligning Lodge's conduct with Apple's Violence and Bullying policies.

27. At a January 7 meeting, HR admitted it had not been made aware by ER of the full extent of Lodge's conduct—including the physical assault—until Ms. Joseph's December 23 email.

28. In light of this, Ms. Joseph requested that her complaint be reopened with a new investigator and, on January 9, reiterated her ongoing safety concerns and requested protective measures be put into place.

29. However, Apple failed to provide any meaningful response or safety plan.

30. As Ms. Joseph's emotional distress worsened and continued to experience panic attacks, Ms. Joseph sought to work remotely as a temporary measure.

31. On January 23, Ms. Joseph's supervisor, Denise Williams-Watts, reported that Lodge continued to engage in emotional outbursts toward women, including outbursts directed at Williams-Watts herself.

32. On January 28, HR proposed a limited plan to notify Ms. Joseph of Lodge's in-person schedule.

33. Later that day, ER leadership minimized Ms. Joseph's concerns and Lodge's conduct, characterizing it as joking and misunderstanding social cues, while acknowledging gaps in its investigation.

34. Ms. Joseph, again, requested her investigation be reopened but was denied.

35. On January 29, Ms. Joseph again escalated her concerns, describing systemic failures in Apple's response to complaints by women and the ongoing impact on her mental health.

36. Throughout February and March, communications with HR and leadership continued, but the proposed measures proved ineffective; the updates regarding Lodge's in-person schedule were inconsistent or untimely, and remote work was not a viable long-term solution for her role.

37. Meanwhile, Lodge continued to be assigned to high-visibility projects without restriction.

38. By contrast, due to Apple's failure to implement adequate remedial measures, Ms. Joseph missed out on numerous valuable work opportunities on projects to which Lodge was assigned, or expected to be assigned, which hindered her professional growth within the company.

## Apple's Knowledge of Ongoing Harassment

39. Notably, Apple had long been on notice of Lodge's harassing and aggressive conduct towards women.

40. Ms. Joseph's supervisor, Denise Williams-Watts, had been reporting Lodge's similar harassment towards women, including herself, to management and HR since at least 2022.

41. Ms. William-Watts provided specific examples of Lodge's harassing conduct toward women, including, in sum and substance, that he stated he "likes the rules in Saudi Arabia for women."

42. Despite this prior knowledge, Apple permitted Lodge's conduct to persist.

43. Even after Ms. Joseph's complaints, Apple failed to conduct an adequate investigation or implement meaningful safeguards in the subsequent months.

44. As a direct result of Apple's failures, Ms. Joseph has been subjected to severe, ongoing emotional distress, including panic attacks, sleep disruption, and PTSD.

45. This emotional distress required Ms. Joseph to seek out ongoing therapy and ultimately take medical leave to address her mental health.

46. Upon returning from medical leave in approximately August 2026, Ms. Joseph continued to experience adverse and retaliatory treatment.

47. Despite her strong performance record and prior representations that she would be promoted during the 2026 promotion cycle, Apple again failed to promote Ms. Joseph from IC3 to IC4.

48. During her performance review, Ms. Joseph was informed that she had been included in the promotion pool but that her supervisor had never seen an employee promoted while on leave.

49. Notably, Ms. Joseph received improved performance ratings in 2026, including an "Exceeded Expectations" rating in Results, and had undertaken additional responsibilities, including advocating for, hiring, and managing a direct report.

50. Nevertheless, Ms. Joseph received only a nominal increase in her total compensation award and her discretionary restricted stock unit grant decreased.

51. Moreover, while Ms. Joseph was on medical leave, her direct report was reassigned to her supervisor and had not been reassigned to Ms. Joseph following her return in August 2026,

further diminishing her supervisory responsibilities and opportunities for professional advancement.

52. Notably, it was only after Ms. Joseph challenged her denial of promotion and corresponding benefits and raised concerns that Apple was continuing to retaliate against her for taking medical leave as a result of the harassment and discrimination she experienced that Apple began reversing its retaliatory actions, including finally recognizing her accomplishments and promoting her from IC3 to IC4.

53. As a result of the harassment, discrimination, and ongoing retaliation, Ms. Joseph continues to suffer significant emotional distress.

**FIRST CAUSE OF ACTION**
(Racial Discrimination)

54. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above as if set forth more fully and at length herein.

55. Section 296.1(a) of the New York Human Rights Law, N.Y. Exec. Law §290 *et seq*., and Title 8 of the New York City Administrative Code, § 8-107 prohibit racial discrimination in employment. Apple was Plaintiff's employer within the meaning of those laws.

56. Plaintiff deserved to retain her employment free of racial discrimination with Defendant and did not do anything to merit discharge or discipline. Nevertheless, Defendant denied Plaintiff the benefit of employment, including all favorable conditions and emoluments thereof, because of hostility to Plaintiff based on her race (Black) and without any non-discriminatory basis thereof. Other non-Black employees were not subject to the same acts of discrimination.

57. As a result of Defendant's actions and omissions, including those of its employees, managers, and/or supervisors, Plaintiff was treated less well and subjected to inferior terms, conditions, and privileges of employment.

58. Defendant's actions were taken under circumstances giving rise to an inference of discrimination.

59. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff suffered emotional distress and adverse employment consequences. Plaintiff was caused to suffer lost past and future wages, professional opportunities, other valuable benefits and emoluments of employment as well as to endure severe emotional pain and trauma, all to her detriment.

**SECOND CAUSE OF ACTION**
(Gender Discrimination)

60. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above as if set forth more fully and at length herein.

61. Section 296.1(a) of the New York Human Rights Law, N.Y. Exec. Law §290 *et seq*., and Title 8 of the New York City Administrative Code, §8-107 prohibits gender discrimination in employment. Defendant was Plaintiff's employer within the meaning of those laws.

62. Plaintiff deserved to retain her employment free of gender discrimination with Defendant and did not do anything to merit discharge or discipline. Nevertheless, Defendant denied Plaintiff the benefits of employment, including all favorable conditions and emoluments thereof, because of hostility to Plaintiff based on her gender and without any non-discriminatory basis thereof. Other employees who were not female were not subject to the same acts of discrimination.

63. As a result of Defendant's actions and omissions, including those of its employees, managers, and/or supervisors, Plaintiff was treated less well and subjected to inferior terms, conditions, and privileges of employment.

64. Defendant's actions were taken under circumstances giving rise to an inference of discrimination.

65. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff suffered emotional distress and adverse employment consequences. Plaintiff was caused to suffer lost past and future wages, professional opportunities, other valuable benefits and emoluments of employment as well as to endure severe emotional pain and trauma, all to her detriment.

**THIRD CAUSE OF ACTION**
(Hostile Work Environment)

66. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above as if set forth more fully and at length herein.

67. Section 296.1(a) of the New York Human Rights Law, N.Y. Exec. Law § 290 *et seq.*, and Title 8 of the New York City Administrative Code, § 8-107 prohibit harassment based on race and gender in employment. Defendant was Plaintiff's employer within the meaning of those laws.

68. Plaintiff deserved to retain her employment free of racial and gender harassment with Defendant and did not do anything to merit discipline. Nevertheless, Defendant denied Plaintiff the benefits of employment, including all favorable conditions and emoluments thereof and created and allowed to exist a hostile, intolerable workplace based on racial and gender harassment that imposed upon her by the conduct of its employees, managers, and supervisors, of which they were well aware of and without any non-discriminatory basis thereof.

69. As a result of Defendant's actions and omissions, including those of its employees, managers, and/or supervisors, Plaintiff was treated less well and subjected to inferior terms, conditions, and privileges of employment.

70. Defendant's actions were taken under circumstances giving rise to an inference of discrimination.

71. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff suffered emotional distress and adverse employment consequences. Plaintiff was caused to suffer lost past and future wages, professional opportunities, other valuable benefits and emoluments of employment as well as to endure severe emotional pain and trauma, all to her detriment.

**FOURTH CAUSE OF ACTION**
(Retaliation)

72. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above as if set forth more fully and at length herein.

73. Section 296.1(a) of the New York Human Rights Law, N.Y. Exec. Law § 290 *et seq.*, and Title 8 of the New York City Administrative Code, §8-107 prohibits retaliation against an employee who seeks to assert rights under the Human Rights Laws. Defendant was Plaintiff's employer within the meaning of this law.

74. Plaintiff complained to Defendant about the mistreatment based on race and gender inflicted upon her by Lodge. In response, Plaintiff was subjected to additional mistreatment all with the knowledge and approval of Defendant for the purpose of punishing her for attempting to assert her rights.

75. As a result of Defendant's actions, including those of its employees, managers, and/or supervisors, Defendant engaged in conduct that was reasonably likely to deter Ms. Joseph, or any reasonable employee, from engaging in protected activity.

76. Defendant's actions were taken under circumstances giving rise to an inference of retaliation.

77. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff suffered emotional distress and adverse employment consequences. Plaintiff was caused to suffer lost past and future wages, professional opportunities, other valuable benefits and emoluments of employment as well as to endure severe emotional pain and trauma, all to her detriment.

**FIFTH CAUSE OF ACTION**

(Retaliation in Violation of New York's Whistleblower Labor Laws)

78. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above as if set forth more fully and at length herein.

79. Defendant violated New York's Whistleblower Labor Laws, N.Y. Lab. Law § 740(2).

80. Plaintiff is an "employee" as defined under N.Y. Lab. Law § 740(1)(a).

81. Apple was Plaintiff's "employer" as defined under N.Y. Lab. Law § 740(1)(b).

82. Plaintiff disclosed to Apple's supervisors of an activity, policy, or practice of Apple that Plaintiff reasonably believed is in violation of law, rule, or regulation or reasonably believed poses a substantial and specific danger to the public health or safety. N.Y. Lab. Law § 740 2(a).

83. As a result of Apple's violation of N.Y. Lab. Law § 740, Plaintiff suffered the harms and damages alleged above in this Complaint.

84. Apple's unlawful acts have caused Plaintiff economic damages in the form of lost income, benefits, and consequential damages in an amount to be proved at trial.

85. Apple's unlawful acts have caused Plaintiff noneconomic damages in the form of emotional distress, in an amount to be proved at trial.

86. Pursuant to N.Y. Lab. Law § 740(4) & (5), Plaintiff is entitled to bring a civil action against Apple in a competent jurisdiction, and the jurisdiction can order payment of liquidated damages, costs and reasonable attorneys' fees incurred.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays that this Court grant the following relief against the Defendant:

87. Enter a declaratory judgment, stating that Defendant's practices, policies and procedures subjected Plaintiff to racial and gender harassment and discrimination, making her work environment a hostile workplace in violation of Section 296.1(a) of the New York Human Rights Law, N.Y. Exec. Law § 290 *et seq.* and Title 8 of the New York City Administrative Code, §8-107.

88. Enjoin Defendant from implementing or enforcing any policy, procedure, or practice that denies employees of any race and gender the full and equal enjoyment of its benefits, pay increases, promotional opportunities and advancement within the company, and specifically enjoin Defendant to take the following steps to prevent harassment and discrimination, including but not limited to, a hostile work environment in the workplace:

i. To develop, implement, promulgate, and comply with a policy providing for the training of each and every employee in the civil rights of employees in the workplace, including but not limited to, racial and gender harassment and discrimination and retaliation;

ii. To develop, implement, promulgate, and comply with a policy providing for reporting and investigating complaints regarding civil rights abuses,

including, but not limited to, racial and gender harassment and discrimination and retaliation;

iii. To develop, implement, promulgate, and comply with a policy providing for disciplinary measures to be imposed upon any person found responsible for civil rights abuses, including, but not limited to racial and gender harassment and discrimination and retaliation.

89. On all Causes of Action, enter judgment against the named Defendant and an award of compensatory damages for back pay, front pay, past and future employment benefits, damages for emotional distress, punitive and/or exemplary damages, attorneys' fees, pre and post-judgment interest, in an amount, in excess of the jurisdictional limits of any other court, to be determined at trial by the jury, and further relief as this Honorable Court deems just, equitable, and proper.

Dated: New York, New York
November 4, 2026

EISENBERG & BAUM, LLP

By: *<u>/s/Eric Baum</u>*
Eric Baum, Esq.
Reyna Lubin, Esq.
32 Union Square East
South Elevators - Penthouse
New York, NY 10003
(212) 353-8700
ebaum@eandblaw.com
rlubin@eandblaw.com